HENRY M. ALLEN *vs.* MERRILL W. ALLEN.

Worcester. September 28, 1937. — December 27, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Contract,* Of employment. *Negligence,* Invited person, Motor vehicle, In use of way.

Evidence respecting employment of an adult son by his father warranted a finding that the father was under the duty of exercising due care toward him in operating an automobile in which they were riding to their work.

Evidence warranted a finding of negligence of the operator of an automobile in going to sleep while driving.

TORT. Writ in the Superior Court dated April 14, 1933.

The action was tried before *T. J. Hammond,* J. There was a verdict for the plaintiff in the sum of $4,000. The defendant alleged exceptions.

*C. C. Milton,* for the defendant.

*W. J. Griffin,* for the plaintiff.

QUA, J. The plaintiff is the son of the defendant. On March 18, 1933, the plaintiff was injured when the defendant allowed his automobile, which he was driving, and in which the plaintiff was riding, to run off the road and strike a tree. The only questions presented and argued are whether

there was evidence to support the special findings of the jury (1) that the plaintiff was "in the employ of" the defendant and (2) that the defendant was negligent. The jury also found that there was no gross negligence.

As to the first question there was this evidence: The plaintiff was forty years of age, was married, and had worked at different times for various employers. In the fall of 1932 the defendant told the plaintiff that the defendant and the plaintiff would do the work of grading and painting about a cottage which the defendant was building at "Webster Lake," instead of letting that work to the contractor, and that the defendant would pay the plaintiff what he would have to pay outside labor. The plaintiff worked for the defendant at the lake three days in October. In March, a few days before the accident, the defendant asked the plaintiff to meet the defendant on Mechanic Street, in Worcester, the following Saturday in order to paint the cottage. On Saturday the defendant with his automobile met and "picked up" the plaintiff at the stipulated place. In the automobile were the plaintiff's father, his mother, his wife and "the dog." There were also paint and paint brushes. There was a plan to go to the cottage that day. The plaintiff and the defendant "were going to do some work." It was "not a family affair but strictly business." The plaintiff testified that "his father paid him when he worked." The accident happened on the way to the cottage.

Although the trip to the cottage bears some of the aspects of a family holiday, the evidence hereinbefore recited is enough to support a finding that the plaintiff was in the employ of the defendant, so that the defendant's undertaking to transport the plaintiff was not a gratuitous undertaking, but was one which imposed upon the defendant the duty to exercise due care. *Lyttle* v. *Monto,* 248 Mass. 340. *Jackson* v. *Queen,* 257 Mass. 515. *Labatte* v. *Lavallee,* 258 Mass. 527. *Foley* v. *McDonald,* 283 Mass. 96. *Epstein* v. *Simco Trading Co. Inc.* 297 Mass. 282. The relation of father and son did not require a different result. *Hawkes* v. *First National Bank of Greenfield,* 261 Mass. 109. *French* v. *Bray,* 263 Mass. 121, 123. *Tower* v. *Jenney,* 279 Mass.

208, 211. *Macomber* v. *King*, 288 Mass. 381, 383. The case is distinguishable from *Baker* v. *Hurwitch*, 265 Mass. 360, *Jacobson* v. *Stone*, 277 Mass. 323, *Drea* v. *Drea*, 292 Mass. 477, *Woods* v. *Woods*, 295 Mass. 238, 241, and other cases cited by the defendant.

There was also evidence of the defendant's negligence. As the automobile was running off the road, the defendant was seen "with his chin buried in his chest and his hand lying limp on the lower part of the wheel." When the plaintiff shouted, "look out" the defendant jerked his head from a bowed position and began struggling with the wheel, trying to turn the automobile back onto the road. In a hospital after the accident, the defendant said that he did not know what happened, that he did not know why the car went off the road, and when one of the witnesses told him that he had fallen asleep, he replied, "I may have. Perhaps I did." What was observed of the defendant's conduct and what he said, taken together, would justify a finding that the defendant negligently went to sleep at the wheel. *Blood* v. *Adams*, 269 Mass. 480. *Moore* v. *Patrone*, 298 Mass. 198.

*Exceptions overruled.*